UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM DUNN | ) | |
| | ) | |
| v. | ) | No. 2:13-0107 |
| | ) | JUDGE CAMPBELL |
| UNITED STATES OF AMERICA | ) | |

ORDER

Pending before the Court is the Petitioner's Application To Proceed In Forma Pauperis (Docket No. 58). Through the Application, the Petitioner requests that he be allowed to proceed in forma pauperis in this proceeding. The Court finds that the Petitioner is a pauper and the Application is granted on that basis.

Also pending before the Court are the Petitioner's Motion For Discovery (Docket Nos. 57), the Government's response (Docket No. 65) in opposition, and the Petitioner's Reply (Docket No. 67). Through the Motion, the Petitioner seeks the production of various items, which the Court will address in turn below.

Rule 6(a) of the Rules Governing § 2255 Cases in the United States District Courts provides that a district judge may permit a party to conduct discovery "for good cause." The Supreme Court has stated that "good cause" is shown, for purposes of Rule 6(a), "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 117 S.Ct. 1793 (1997)(quoting Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969)). Subsection (b) of Rule 6 provides that the party requesting discovery must provide reasons for the request and must specify any requested documents.

Following a two-week jury trial, the Petitioner was convicted of all 21 charges in the Fifth Superseding Indictment: conspiracy to commit solicitation of murder for hire; conspiracy to commit murder for hire; two counts of murder for hire; two counts of solicitation to commit murder for hire; conspiracy to distribute marijuana, codeine, cocaine, dihydrocodeine, alprazolam, and diazepam; distribution of marijuana; three counts of distribution of cocaine; two counts of possession with intent to distribute various controlled substances; possession and distribution of pseudoephedrine; possession of a machine gun; possession of an unregistered firearm; possession of a machine gun in furtherance of a drug trafficking crime; possession of a firearm in furtherance of a drug trafficking crime; solicitation to murder a federal employee; and two counts of obstruction of justice. (Docket Nos. 166, 252, 338 in Case No. 2:06-00019).

In his Motion To Vacate (Docket No. 1), the Petitioner has raised 55 separate claims, including right to counsel and due process claims based on the admission of Petitioner's statements to various Government witnesses; due process claims based on the Government's failure to comply with discovery obligations; claims that officers illegally searched Petitioner's residence and seized his computer equipment; double jeopardy claims regarding his sentence; and numerous claims of ineffective assistance of counsel.

The Petitioner requests that the Government produce the following items:

Request No. 1 – The Petitioner seeks information possessed by the Tennessee Department of Revenue ("TDR") relating to seizures of his property. The Petitioner argues that this information would include a fax he sent to the TDR on May 24, 2006 challenging the seizures and requesting a hearing. According to the Petitioner, the information would support his claim of bad faith conduct by the Government, and his claim that trial counsel failed to

adequately investigate. In its Response, the Government states that it does not possess, and has not possessed, TDR records.

The record in Petitioner's criminal case indicates that the Court held a lengthy hearing on this and other issues on September 26, 2008, during which TDR employees and other witnesses testified. (Transcript of September 26, 2008 Hearing (Docket No. 359 in Case No. 2:06-00019)). The TDR witnesses testified that they did not receive any notice that the Petitioner contested the seizure or the sale of the computers and other assets seized from the Petitioner. (Id.)

The Petitioner has offered no evidence indicating that the Government is in possession of the May 24, 2006 fax he describes. Nor has the Petitioner shown that the other TDR records he requests are in the possession of the Government. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied. Certain TDR records were admitted at the September 26, 2008 hearing (Exhibits 4, 9, and 10), however, and the Court directs the Clerk of Court to provide a copy of those exhibits to the Petitioner.

Request No. 2 – The Petitioner requests the "portable USB 'memory stick' storage device confiscated by the government from Dunn on September 11, 2008." (Docket No. 57, at 4). The Petitioner argues that this information would support his claim that counsel failed to adequately investigate his case.

The record in Petitioner's criminal case indicates that officials at the Grayson County Jail confiscated the memory stick from the Petitioner in September, 2008 during a search of his cell that occurred after the Petitioner committed certain disciplinary infractions. (Docket No. 210-1 in Case No. 2:06-0001). Prison rules required that the memory stick be kept in the prison law library. (Id.) Officials reviewed the data on the memory stick and found that it contained, in

addition to legal material, the names of certain jail deputies and their personal cell phone numbers, as well as information about other inmates. (Id.)

In its Response to the pending Motion, the Government indicates that Assistant United States Attorney Byron Jones reviewed the data on the memory stick after it was confiscated to determine if criminal charges should be brought based on its contents, and to ensure that the Assistant United States Attorney who was prosecuting the Petitioner's criminal case would not have access to any legal materials on the memory stick. The Response further states that Hershel Koger, Petitioner's counsel after trial and prior to sentencing, subsequently picked up the memory stick from the U.S. Attorney's Office, but that AUSA Jones has a copy of the information taken from the memory stick.

The Court concludes that the Petitioner has shown "good cause" for obtaining a copy of the legal material on the memory stick. Any information regarding the jail, its personnel, or other inmates, however, should be redacted from the copy provided to the Petitioner as this information is not relevant to Petitioner's claims.

Request No. 3 – The Petitioner requests any State or Federal documents or other material evidencing all purchases of pseudoephedrine between 2001 and 2007 by the Petitioner; Misty Langford, the Petitioner's Co-Defendant; Julie Packingham (Ms. Langford's sister); Ryan Packingham (Ms. Packingham's husband); Crystal Scearse (Ms. Langford's friend); Nick Christian (Confidential Informant No. 1); J.C. Harville, Jr. (Confidential Informant No. 2); J.C. Harville, Sr. (Mr. Harville's father); Leon Hall (Ms. Langford's father); and Melissa Byrd/Melissa Hall (Mr. Hall's current wife). The Petitioner argues that this information would show that Co-Defendant Langford and her friends, rather than the Petitioner, were collecting

pseudoephedrine, and would support his claim that counsel failed to adequately investigate his case relating to the allegation about trading a machine gun for pseudoephedrine.

In its Response, the Government states that it does not possess, and has not possessed, the material the Petitioner requests.

Petitioner has offered no evidence indicating that the material he requests exists, or if it exists, that it is in the possession of the Government. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 4 – The Petitioner requests any consent or waiver forms he signed between January 12, 2004 and February 27, 2004, at the request of any employee of the Putnam County Sheriff's Office. In addition, the Petitioner requests information regarding the Department's archiving and storing of executed consent or waiver forms. The Petitioner argues that this information is relevant to support his testimony, and impeach the testimony of Detective Randy Roland, regarding the dates and times his residence was searched.

The record indicates that Petitioner's trial counsel asked Detective Roland at trial about whether he searched the Petitioner's residence in 2003 or 2004, prior to the date of any charges in the Fifth Superseding Indictment. (Trial Transcript, at 379-81 (Docket No. 309 in Case No. 2:06-00019)). In response to the Government's objection, trial counsel stated that he was attempting to show that Detective Roland was biased against the Petitioner before the dates of the charges. (Id.) The Court permitted counsel to explore the issue, and Detective Roland testified that he had accompanied Detective Burgess to Petitioner's residence sometime in 2003, but did not search the residence and could not recall any details. (Id.)

The Petitioner has offered no evidence of the existence of a waiver or consent form for

the dates requested. Even if the Court assumes the existence of such a waiver or a consent form, however, the Petitioner has not shown how such a document would be relevant in supporting his pending claims. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 5 – The Petitioner requests all applications for search warrants, and supporting affidavits, drafted or signed by Putnam County Sheriff's Office employees Randy Roland, Jeff Cessna, or Steve Flowers, or ATF employee Mark Ridner, anytime between October 1, 2005 and May 2, 2007, in which a computer or digital data is mentioned. The Petitioner contends that this information is relevant to impeach the testimony of Government witnesses that they had no interest in digital data, and did not seize the Petitioner's computer.

Assuming the existence of the documents requested by Petitioner, he has failed to show how search warrants and affidavits seeking digital data in other cases are relevant to support his claims. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 6 – The Petitioner requests records and other information related to his arrest on April 24, 2006 by the Putnam County Sheriff's Office, and his custody from that date until his release on April 27, 2006. In addition, Petitioner seeks disclosure of all reasons he was held for 72 hours in custody in light of the fact that his bail bond was secured and processed within 24 hours of his arrest. The Petitioner contends that this information supports his claims that officials destroyed exculpatory evidence in bad faith, that he was subject to an illegal search and seizure, and that counsel was ineffective for lack of diligence.

Assuming that Petitioner could prove that the Putnam County Sheriff's Office failed to release him from custody in a timely manner, he has not shown how such information is relevant

to support his claims. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 7 – The Petitioner requests ATF Report of Investigation Nos. "26, 27, and 36 et seq." The Petitioner argues that these reports were not disclosed by the Government, and that they support his claim that counsel was ineffective for failing to obtain them.

The Government contends that the Petitioner is engaging in a fishing expedition, but does not deny that the reports exist or that it failed to provide them to trial counsel.

The Court concludes that the Petitioner has shown "good cause" for the disclosure of ATF Report of Investigation Nos. 26, 27, and 36, as well as other ATF Reports related to the Petitioner's criminal case.

Request No. 8 – The Petitioner requests the Pre-Sentence Investigation Report of Co-Defendant Misty Langford. The Petitioner contends that the Report supports his allegations that Co-Defendant Langford was an agent for the prosecution, that she lied about her prior drug use, and that counsel was not diligent in pursuing such information. The Petitioner also points out that the Government cited the Report in its Response to his Motion To Vacate (Docket No. 39, at 26). As the Government has cited Paragraphs 56 and 57 of the Pre-Sentence Investigation Report, which relate to Ms. Langford's educational and vocational skills, in its Response to the Motion To Vacate, the Court concludes that the Petitioner has shown "good cause" for disclosure of those paragraphs to the Petitioner. The Petitioner has not shown "good cause" regarding the remainder of the Pre-Sentence Investigation Report, as he has not shown that the information in the Report would have been accessible to trial counsel, or that it would be relevant to support his argument regarding Ms. Langford's "agency status," or that it contradicts

7

her testimony regarding prior drug use.

Request No. 9 – The Petitioner requests all documents regarding Government witness Alanda Lewis and how she became of interest to the Government in relation to his prosecution. The Petitioner contends that such information is relevant to show that counsel was not diligent, and that it would impeach the testimony of Alanda Lewis and Co-Defendant Langford. The Petitioner indicates that during pretrial discovery, he was provided with a copy of the ATF Report Of Investigation documenting Ms. Lewis's interview with officers. The Petitioner argues that "whatever led the government to pursue Lewis is equally exculpatory, and counsel should have sought it." (Docket No. 57, at 8).

The Petitioner has not shown that documents indicating how the Government came to interview Ms. Lewis, assuming such documents exist, would necessarily be exculpatory or otherwise be relevant to support his claims. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 10 – The Petitioner requests all sentencing hearing transcripts, sentencing memoranda, change of plea hearing transcripts, motions to modify or reduce sentence, 5K1.1 motions, Pre-Sentence Investigation Reports, and statements of reasons filed in any and all jurisdictions relating to Government witness Brian Metheney. The Petitioner argues that these documents relate to the "agency status" of Mr. Metheney, and show that counsel's failure to obtain these documents was ineffective.

The record indicates that Mr. Metheney was questioned at Petitioner's trial about a plea agreement he entered in the Eastern District of Tennessee that contemplated a possible reduction in his sentence in exchange for his cooperation. (Trial Transcript, at 1232-38, 1288-92, 1302

(Docket No. 313)). The plea agreement was admitted as an exhibit. (Id.)

The Petitioner has not shown how information "filed in any and all jurisdictions" relating to Mr. Matheney's criminal proceedings would likely be relevant to support his claim of Mr. Matheney's "agency status" with the Government, or that counsel was not diligent in obtaining these documents. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Request No. 11 – The Petitioner requests the video footage of Co-Defendant Langford's post-arrest interrogation on October 30, 2006. The Petitioner indicates that he was provided with a transcript of the video only, not the video itself. The Petitioner argues that the video is relevant to Co-Defendant Langford's "agency status," as well as the failure of trial counsel to raise certain defenses.

In its Response, the Government contends that the Petitioner was provided with a copy of the DVD of Ms. Langford's October 30, 2006 interview prior to trial.

The Court concludes that the Petitioner has shown "good cause" for this request. Accordingly, the Government shall provide the Petitioner with a copy of the videotaped interview of Ms. Langford on October 30, 2006.

Request No. 12 – The Petitioner requests the identity of the person who authored the statements read to the grand jury by Government witnesses Misty Langford, Brian Matheney, and Michelle Polites. The Petitioner argues that the statements read by these witnesses to the grand jury were "strikingly verbatim to one another," (Docket No. 57, at 10), and argues that this information would support his claim that counsel was ineffective for failing to investigate and to impeach these witnesses.

9

The Court concludes that the Petitioner has not provided enough information to allow the Court to determine whether the information he requests is relevant to his claims. The Petitioner has failed to provide a copy of the grand jury testimony of these witnesses, or a citation to the record in the underlying criminal case where such testimony was filed. Accordingly, the Petitioner has not shown "good cause" for this request, and it is denied.

Petitioner's Request Nos. 13 through 22 are related, and the Court will address them as a group:

Request No. 13 – The Petitioner requests a copy of U.S. Postal Mail records and certified mail logs from United States Penitentiary Coleman 2 (USP2) that document mailings sent to or by the Petitioner at any time. The Petitioner argues that these records show that the USP2 staff chronically fails to follow their own rules and procedures, and is relevant to the statute of limitations argument made by the Government in its Motion To Dismiss (Docket No. 38).

Request No. 14 – The Petitioner requests USP2 rules, regulations, and procedures for special/legal mail for inmates confined in the Special Housing Unit, and the location where these rules are posted for view by inmates. The Petitioner argues that these records are relevant to the Government's statute of limitations argument in the Motion To Dismiss (Docket No. 38).

Request No. 15 – The Petitioner requests all documents that indicate the delivery of U.S. Postage stamps, due to Petitioner's indigency, by USP2 staff at any time. The Petitioner argues that this information shows the staff failed to provide him with postage for legal mail, and is relevant to the Government's statute of limitations argument in the Motion To Dismiss (Docket No. 38).

Request No. 16 – The Petitioner requests copies of all "Incident Report" documents (and

attachments), written or distributed during the month of May, 2013, referencing the Petitioner or his cell partner on May 9, 2013, Henry Parrish. The Petitioner does not state the basis for this request.

Request No. 17 – The Petitioner requests any documents related to the May 9, 2013 events which resulted in his being placed in detention. The Petitioner argues that this information supports his claim that USP2 staff denied him access to his own legal materials which is disputed by the Government in connection with the statute of limitations issue in the Motion To Dismiss (Docket No. 38).

Request No. 18 – The Petitioner requests all video footage available from cameras showing the interior of USP2 Housing Unit K2, the "West Corridor," the "Captain's Complex," and the sidewalk between the "East" and "West" Corridors on the south side of the area known as the "Compound," for the 23-hour period of May 9, 2013. The Petitioner does not state the basis for this request.

Request No. 19 – The Petitioner requests a copy of his "Central File" kept by the Federal Bureau of Prisons ("BOP"). The Petitioner contends that the file will prove that his legal property was taken by USP2 staff, which supports his equitable tolling argument in response to the Motion To Dismiss (Docket No. 38).

Request No. 20 – The Petitioner requests all property receipts from all BOP departments referencing him. The Petitioner contends that this information will show the disposition of his legal materials which has been disputed by the Government.

Request No. 21 – The Petitioner requests copies of documents labeled "Inmate Request to Staff" or "Cop-Out"submitted by him to USP2 staff between May 1, 2013 and February 20,

2014, and any rules regarding the storing of these documents. The Petitioner contends that these documents will support his argument of blocked access to his legal materials which has been disputed by the Government.

Request No. 22 – The Petitioner requests any and all "mention, reference, or listing of Dunn in any log, chronicle, note, report, or any other staff reference or document" from January 1, 2010 to the present. (Docket No. 57, at 13). The Petitioner argues that this information will substantiate his claims about the location of his legal material, and his contention that he was diligent in seeking access to the material.

The record indicates that the Government contends in its Motion To Dismiss (Docket No. 38) that the Petitioner failed to file his Motion To Vacate within the statute of limitations period. In support of that argument, the Government has filed the affidavit of a prison staff member stating that there is no record on the certified mail log of a mailing by Petitioner from September 30, 2013 to October 15, 2013. (Docket No. 38-1). The Government has also filed an affidavit of a prison staff member stating that the Petitioner's legal mail was not confiscated as claimed by the Petitioner. (Docket No. 39-1).

In its Response to Petitioner's Request Nos. 13-22, the Government indicates that it does not possess the documents the Petitioner seeks, and that he should seek such documents from the prison facility.

As the Government does not possess the materials sought by the Petitioner, the Petitioner has not shown "good cause" for the request, and it is denied. The Court notes that the Petitioner is free to file his own affidavit relating facts relevant to the statute of limitations issues raised in the Motion To Dismiss.

The Petitioner requests that the Clerk of Court provide a copy of the following items:

Request No. 18 (sic) – The Petitioner requests all time-keeping records and records of expenditures submitted by, and any payments made to, defense counsel pursuant to 18 U.S.C. § 3006A. The Petitioner argues that this information will support his ineffective assistance of counsel claims.

The Clerk of Court is not the custodian of time-keeping and expenditure records of defense counsel, and therefore, this request is denied. A review of the docket in the underlying criminal case, however, reveals certain requests for expenditures made through motion to the Court by defense counsel and approved by the Court. The Clerk is directed to provide these filings, at Docket Nos. 52, 53, 102, 104, 190, 192, to the Petitioner.

Request No. 23 – The Petitioner requests certain documents filed in the underlying criminal case regarding continuances of the sentencing hearing of Co-Defendant Langford, specifically, Docket Nos. 111, 112, 128, 175, and 176. The Petitioner contends that these documents support his "agency status" argument, and his ineffective assistance of counsel claims.

Although certain of these documents were filed under seal due to Co-Defendant Langford's anticipated cooperation with the Government, the Court has reviewed the documents and has concluded that it is no longer necessary to prevent the Petitioner's access to the documents given that the criminal proceeding has been concluded. The Clerk of Court is directed to provide Docket Nos. 111, 112, 128, 175, and 176 to the Petitioner.

Request No. 24 – The Petitioner requests certain documents filed in the underlying criminal case regarding the sentencing of Co-Defendant Langford, specifically Docket Nos. 265-

270, 275, and 276. The Petitioner also requests "any other documents in any way related to Langford's sentence, including, but in no way limited to the statement of reasons and any 5K1.1 Motions to reduce her sentence." (Docket No. 57, at 14). The Petitioner contends that these documents support his "agency status" argument, and his ineffective assistance of counsel claims.

Certain of the requested documents were filed under seal, specifically Docket Nos. 268, 270 and 276. Docket No. 268 contains two psychological evaluations of Ms. Langford, and Docket No. 270 is a sentencing memorandum drafted by Ms. Langford's counsel referencing information in the psychological evaluations. Docket No. 276 is the Government's Motion For Downward Departure recommending a reduction in Ms. Langford's sentence. The Court has reviewed these documents and concludes that it is no longer necessary to prevent Petitioner's access to Docket No. 276. The psychological evaluations and the sentencing memorandum, however, contain personal, confidential medical information for which the Petitioner has not shown "good cause." Accordingly, the Clerk of Court is directed to provide Docket Nos. 265, 266, 267, 269, 275, and 276 to the Petitioner.

As for the Petitioner's request for "any other documents" related to Ms. Langford's sentencing, the request is denied because it does not identify specific documents and is overbroad. The Court notes that Petitioner's request for "any 5K1.1 Motions" is moot in light of the Court's providing him with a copy of Docket No. 276. As for the "statement of reasons," which accompanies the Judgment of Conviction and is filed under seal pursuant to a policy of the United States District Courts, the Petitioner has not shown "good cause" for the production of that document.

Request No. 25 – The Petitioner requests a copy of the transcript of Co-Defendant Langford's change of plea hearing filed at Docket No. 329 in the underlying criminal case. The Petitioner contends that the transcript supports his "agency status" argument, and his ineffective assistance of counsel claims.

Although the transcript was filed under seal due to Co-Defendant Langford's anticipated cooperation with the Government, it is no longer necessary to prevent the Petitioner's access to the transcript given that the criminal proceeding has been concluded. The Clerk of Court is directed to provide Docket No. 329 to the Petitioner.

Request No. 26 – The Petitioner requests a copy of a letter he alleges that he sent to the Clerk of Court, received sometime between October 5, 2013 and October 25, 2013, requesting a copy of his filed 2255 [Motion To Vacate]. The Petitioner contends the letter would prove that he filed his 2255 in a timely fashion.

The Court has reviewed the docket in the Petitioner's underlying criminal case, and the docket in this case, and such a letter does not appear on the docket. Accordingly, this request is denied.

Request No. 27 – The Petitioner requests Docket Nos. "17, 18, 24, 27-31, 40-41, 45, 47-48, 52-53, 55-65, and 66 et seq" and "[a]ll documents filed in the instant matter." (Docket No. 57, at 15).

The Clerk is directed to provide the Petitioner with a copy of Docket Nos. 17, 18, 24, 27-31, 40-41, 45, 47-48, 52-53, 55-65, and 66 filed in this case. Petitioner's request for all documents filed in this matter is denied as overbroad. The Court notes that the Petitioner has already been provided with copies of numerous documents that have been filed in this case.

(Docket No. 23).

It is so ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE